[Crim. No. 86.    Second Appellate District.—July 16, 1908.]

THE PEOPLE, Respondent, v. W. H. ·HUTCHINGS, CLYDE HAMBLETON, and FRANK BULPITT, Appellants.

CRIMINAL LAW—GRAND LARCENY OF STEER—INFORMATION—OWNERSHIP —AVERMENT OF POSSESSION TREATED AS SURPLUSAGE.—An information for grand larceny in the stealing of a steer, the personal property of an owner named, need not allege that it was taken from his possession; and an averment to that effect states neither a necessary element of the offense nor any part of the description of the property alleged to have been taken, and may be treated as surplusage.

ID.—INSTRUCTIONS AS TO POSSESSION AND OFFENSE—IMPROPER REQUEST—PROPER INSTRUCTIONS.—An instruction requested by defendant that unless the evidence established that the steer was taken from the possession of the alleged owner, a verdict of not guilty should be returned, was properly refused; but the jury was properly instructed that if defendants found the animal in a field belonging to the mother of one of them, knowing that it was not the property of either of them, and intending to steal it, converted the same to their own use, the alleged offense was established.

ID.—DESCRIPTION OF STEER—CONFLICT—VARIANCE NOT ESTABLISHED— VERDICT CONCLUSIVE.—Where the steer stolen was described as a brindle steer, and the defendants claimed that the steer killed by them was a red steer, it is held that the variance was not estab-

lished, it having been clearly proved by the prosecution that the steer killed was the brindle steer described, and that the hide given away by them was the hide of the brindle steer, notwithstanding the conflicting evidence of defendants to the contrary. The conflict was conclusively resolved by the verdict of guilty, and by the action of the trial court in denying a new trial.

ID.—ADMISSIBILITY OF EVIDENCE—BRAND OF OWNER—BRINDLE HIDE.— It was proper to permit the prosecution to introduce in evidence the brand of the owner and also to introduce the brindle hide, there being sufficient evidence tending to identify it as the hide of the steer stolen and killed by defendants.

ID.—QUESTION FOR TRIAL COURT—SUFFICIENT WEIGHT OF EVIDENCE FOR ADMISSIBILITY.—The admissibility of evidence which depends upon the sufficiency of its weight to entitle it to be submitted to the jury is a question which rests largely in the determination of the trial court.

ID.—TESTIMONY OF PERSON IN CONTROL OF STEER.—It appearing that the owner of the steer was sick, it was proper to allow his father, who was in control of his cattle during his illness, to testify that he gave no one permission to take the steer.

ID.—EXCLUSION OF WITNESSES NOT UNDER EXAMINATION—REFUSAL OF COURT TO INSTRUCT WITNESSES—DISCRETION.—Where, at the beginning of the trial, the witnesses not under examination were excluded from the courtroom, although in a proper case the witnesses should be instructed not to talk to other parties about their testimony, it is a matter which rests in the sound discretion of the trial court, and its action in refusing such instructions will not be interfered with where it is not shown that any prejudice resulted therefrom.

ID.—REFUSAL TO STRIKE OUT EVIDENCE—HARMLESS ERROR.—Error in denying a motion of the defendant to strike out evidence which tended to weaken the case of the people, and in denying another motion to strike out evidence for the people, which appears elsewhere, and was testified to by one of the defendants, is harmless, and could not have prejudiced the appellants.

ID.—INADMISSIBLE EVIDENCE—MISTAKES IN BRANDING CATTLE.—The court properly refused to admit evidence for the defendant to show that a witness for the defendant was in the habit of making errors in the branding of his cattle, and that mistakes as to the identity of cattle had been made by others in the neighborhood.

ID.—ADMISSION OF DEFENDANT IN CONFLICT WITH TESTIMONY.—Admissions made by a defendant to the officers which were not confessions, and which were in conflict with his testimony, were admissible in evidence against him, notwithstanding a suggestion by the sheriff that it would be best for him to make a clear statement of the entire transaction. Such evidence was admissible as part

of the case of the prosecution, and need not be limited to the purposes of impeachment.

ID.—IMPEACHING EVIDENCE—FOUNDATION REQUIRED.—In order to introduce the statements of the defendant as impeaching evidence, it was necessary that he should have been first asked if he had made these statements before the impeaching witnesses were permitted to testify to them. A defendant who testifies in his own behalf, thereby subjects himself to the same rules for testing the truth of his statements as any other witness.

ID.—SURREBUTTING EVIDENCE OF DEFENDANT.—The defendant was entitled to surrebut the evidence given in rebuttal as to his declarations for the purpose of showing an additional part of the conversation; but where there is nothing in the record to show that all of the conversations between him and the officers had not been given in his former evidence, and that of the officers, or that the two conflicting versions of it before the jury were not all of the conversation that was at all material to the subject matter, no prejudicial error appears in the record in excluding the surrebutting evidence.

ID.—TECHNICAL ERROR NOT OF ITSELF GROUND FOR REVERSAL—BURDEN ON APPELLANTS TO SHOW PREJUDICE.—That a technical error has intervened at the trial is not of itself sufficient to warrant a reversal; but the burden is upon the appellants to show affirmatively that their substantial rights have been injuriously affected by the error complained of.

ID.—REASONS OF RULING NOT ALONE CONSIDERED.—When a ruling rejecting evidence is relied upon to reverse a judgment, the appellate court is not confined to a consideration of the objection made by the respondent; but if for any reason the ruling was proper, appellants cannot complain because deprived of improper evidence, or of evidence that could not affect the verdict or prejudice their case.

APPEAL from judgments of the Superior Court of Inyo County against appellants respectively, and from an order denying their motion for a new trial. Walter A. Lamar, Judge.

The facts are stated in the opinion of the court.

White Smith, Frank V. Drake, and P. W. Forbes, for Appellants.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

TAGGART, J.—Appellants were charged, jointly with one John Gray, with the crime of grand larceny. The charge was dismissed as to Gray, and appellants were each and all convicted as charged. They appeal from the judgments entered against them respectively, and from an order denying their motion for a new trial.

It is contended in support of the appeal that the verdict is contrary to law and the evidence, that the court erred in its rulings upon the admission and rejection of evidence at the trial, and in giving and refusing to give certain instructions to the jury.

The information alleges that the defendants "did . . . steal, take and drive away [from the possession of one George L. Wallace] one large brindle steer branded," etc., ". . . said steer was and being then and there the personal property of said George L. Wallace," etc. It is urged by appellants that because of the allegation that the animal was taken from the possession of the owner they were entitled to have the jury instructed that unless the evidence established that the steer was taken from the possession of George L. Wallace a verdict of "not guilty" should be returned. For the same reason it is contended that it was error for the court to give an instruction to the jury to the effect that if the defendants found the animal running in a field belonging to the mother of one of them, knowing that it was not their property or the property of either of them, and intending to steal it, and converted it to their own use, the crime was established.

Grand larceny is the felonious stealing of the property of another, and is committed when the property stolen exceeds $50 in value, is taken from the person of another, or is one of a number of things specifically enumerated, among which is a "steer." The property stolen, being alleged and proven to be one of a kind named by the statute, it was not necessary that it should have been taken from the person of another in order that its taking should be grand larceny; neither is it necessary that it should have been taken from the possession of the owner. If this were true, there could be no larceny of an animal temporarily out of the possession of its owner. The allegation in the information that the animal was taken "from the possession of one George L. Wallace" may be treated as surplusage.

The rule applied in *People* v. *Handley,* 100 Cal. 370, [34 Pac. 853], to the identity and description of the property affected has no application to this question. The possession of the owner here was neither a necessary element of the offense nor any part of the description of the property alleged to have been taken. (*People* v. *Geiger,* 116 Cal. 442, [48 Pac. 389].) Its presence in the information neither added to nor detracted from the force and effect of that pleading. (*People* v. *Cleary,* 1 Cal. App. 52, [81 Pac. 753].)

Invoking the rule that though the allegation in the information that the steer taken was a large brindle one was not essential to a statement of the offense, yet having so described it the prosecution were required to prove the animal as described, appellants contend that there is a variance between the allegation and proof, and it is in this respect it is claimed the evidence does not sustain the verdict.

There is no merit in the contention that the evidence discloses that the steer killed by defendants was a red and not a brindle one. The animal was clearly identified by the evidence of the prosecution. It was shown by the owner and his father that a brindle steer was missing from their cattle about the time that it is admitted by defendants they killed a steer at the home of one of them, on a ranch adjacent to the pasture where the brindle steer was running when last seen by the owner. It is also admitted that the hide of the steer killed by defendants was given to Gray, one of the defendants, and proven that the latter gave this hide to an Indian, in whose possession it was found a few days afterward by the sheriff and identified by the father of the owner. The ears, which on the brindle steer were marked, were cut off at the time of the killing, and the explanations of one of the defendants as to the animal killed were contradictory, and the jury was justified in discrediting their statements as to the color of the steer killed. That defendants testified that the steer which they killed was a red one only operated to create a conflict in the evidence, and the conflict was conclusively resolved and settled by the verdict of the jury and order of the court denying the motion for a new trial.

Specifications of error Nos. 1, 2, 4 and 8 relate to the reception of testimony over defendants' objections. It was proper to permit the prosecution to introduce in evidence a

diagram of the brand of the owner, and also to introduce the brindle hide, as there was sufficient evidence tending to identify it as that of the steer belonging to Wallace and also as that of the steer that was killed by defendants. The admissibility of evidence which depends upon the sufficiency of its weight to entitle it to be submitted to the jury, is a question which rests largely in the determination of the trial court. (*People* v. *Frank,* 28 Cal. 518; *People* v. *Harben,* 5 Cal. App. 29, [91 Pac. 398].)

The father of the owner of the steer being in control of the cattle at the time of the larceny, owing to the illness of his son, it was proper that he should be permitted to testify that he had not given permission to anyone to take the steer. If it had been taken with his consent there would have been no crime committed.

The witnesses not under examination were excluded from the courtroom by order of the court made at the beginning of the trial, and at a subsequent recess defendants requested the court to instruct the witnesses not to talk to other parties about their testimony or to tell others what their testimony had been, and it was particularly requested that they be instructed not to talk with other witnesses. The court refused to comply with this request, and its refusal is assigned as error. While in a proper case such instructions to witnesses ought to be given, this is a matter which rests in the sound discretion of the trial court, and in this instance it has not been shown that defendants were in any manner prejudiced by the refusal of the court to give the instructions requested.

A witness named Webb was permitted to testify on behalf of the prosecution that he was a stockman, and for eighteen years was acquainted with the cattle ranges in Inyo and Mono counties and had observed the different brands used on cattle all over the country; that he never saw the brand introduced in evidence and didn't know who used it. Defendants moved to strike out this testimony. The motion should have been granted, but we are unable to see wherein the defendants were prejudiced by the evidence. The only possible effect it could have had was to discredit the testimony of the Wallaces that they had cattle branded with such a brand, and thus weaken the case for the people.

The voluntary statement of the witness Gray that the other hide which he gave to the Indian Piper at the same time he gave him the brindle hide was received from the defendant "Hambleton quite awhile before," should also have been stricken out upon defendants' motion, but, as this same fact appears elsewhere in the evidence and is testified to by Hambleton himself, its admission in this manner could not have prejudiced the appellants.

Objections to the questions addressed to the witness Ford were properly sustained. Whether or not the witness was in the habit of making errors and mistakes in branding his cattle, and that mistakes as to the identity of cattle had been made by others in the neighborhood, were alike irrelevant, and the rulings of the court excluding testimony of that character were proper.

The statements made to the officers by the defendant Hambleton were not confessions, but admissions or declarations in conflict with the testimony which he gave upon the witness-stand. If the suggestion of the sheriff, that it would be best for him to make a clean statement of the entire transaction, be regarded as an inducement, this would not render the declaration inadmissible. (*People* v. *Knowlton*, 122 Cal. 357, [55 Pac. 141].)

As original evidence against the defendant Hambleton, his statements to Collins and Bradshaw were admissible as a part of the case of the prosecution in chief, and need not have been limited to the purposes of impeachment. Attorney for defendants, however, did not ask that the testimony be limited to Hambleton's case upon its admission; nor did he ask the court to instruct the jury to this effect.

In order to introduce the statements of the witness as impeaching evidence it was necessary that Hambleton should have been first asked if he had made these statements before the impeaching witnesses were permitted to testify to the statements. (Code Civ. Proc., sec. 2052.) When a defendant presents himself as a witness on his own behalf, he thereby subjects himself to the same rules for testing the truth of his statements as any other witness. (*People* v. *Hickman*, 113 Cal. 80, [45 Pac. 175]; *People* v. *Bishop*, 134 Cal. 689, [66 Pac. 976]; *People* v. *Oliver*, 7 Cal. App. 601, [95 Pac. 172].) It is apparent that the trial court considered the evidence as impeaching evidence only, and for this reason struck out

all of the testimony of the witness Collins, and admonished the jury to disregard such testimony, and required the prosecution to reintroduce Collins' testimony limited to the statements which were called to Hambleton's attention. The testimony of Bradshaw was not stricken out, but it covered practically the same ground as the impeaching evidence of Collins which was properly admitted, and could not have been prejudicial. It was competent evidence in the case for the people, as above stated, and, considered as rebuttal testimony, should have been restricted in its scope to the same subject matter as that of Collins. No objection was made to it upon the ground that it was not rebuttal testimony, and we must assume that, had there been, the trial court would have sustained such objection to it in so far as it was not proper for the purpose of impeaching Hambleton's testimony.

On surrebuttal it was sought to reintroduce and repeat the testimony of the defendant Hambleton in relation to the statements made by him to the witnesses Collins and Bradshaw. Objections to two questions addressed to the specific language covered by the testimony of Collins were sustained on the ground that the evidence sought was not in surrebuttal. The witness was then asked: "Q. State all the conversation between yourself and Sheriff Collins and D. A. Bradshaw on the occasion of your arrest, and on your way to Bishop, touching the matter with which you were charged under that warrant of arrest?" To this question an objection was sustained on the same ground. The rulings of the court as to the first two questions were undoubtedly correct, as they called merely for a repetition of the testimony given by the witness when first on the stand. That the defendants were entitled to introduce evidence as to all the conversation that was material, when a portion of it had been given, is beyond question. (Code Civ. Proc., sec. 1854.) The objection to the introduction of the testimony made by the respondent, to wit, that the testimony "was not in surrebuttal," was hardly a proper reason for its exclusion, as the conversation sought to be introduced only became material to defendants' case, if it ever did so, when what appellants now claim was but a portion of it was introduced for purposes of impeachment. To hold the evidence inadmissible on the ground that it was not surrebuttal might be to deprive them of evidence to which they were entitled. The prosecution's

contention that the defendants were limited to such other portions of the conversation as they could elicit from the impeaching witnesses upon cross-examination cannot be sustained. But when a ruling rejecting evidence is relied upon to reverse a judgment, we are not confined to a consideration of the objection made by respondent alone. If for any reason the ruling was proper, even though no objection was made at all, appellants cannot complain because deprived of improper or illegal evidence, or evidence that could not affect the verdict of the jury or prejudice their case. (*Davey* v. *Southern Pacific Co.*, 116 Cal. 325, [48 Pac. 117].) Again, we must consider the rule: ''That a technical error has intervened at the trial is (therefore) not of itself enough to warrant a reversal. The defendants must go further, and affirmatively show in some way that their substantial rights have been injuriously affected by the error complained of. The burden is upon them to do so.'' (*People* v. *Brotherton,* 47 Cal. 388; *People* v. *Clark,* 106 Cal. 32, 40, [39 Pac. 53]; Pen. Code, sec. 1258.)

There is nothing in the record to show that all the conversation between Hambleton and Collins and Bradshaw had not been given, and that the two conflicting versions of it before the jury were not all of the conversation that was material to the subject matter. Had Hambleton been asked if there was any other conversation relating to the matter in question, he might have replied that there was not. If it had been made to appear by the record that there was anything else said on the subject that could in any manner have modified or affected that which was testified to by Collins and Bradshaw, then error and prejudice might be said to affirmatively appear, but this was not done.

On his cross-examination, Hambleton denied each and all of the statements testified to by both of the impeaching witnesses, thus negativing all conversation purporting to be given by them. In this sense, and upon this view of the evidence, it might be said that the subsequent attempt to re-examine him in regard to the conversation was not surrebuttal. But whichever view is taken of the ruling, we do not think it discloses such error as to justify a reversal of the judgment.

Judgment and order affirmed.

Allen, P. J., and Shaw, J., concurred.